IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12-20008 |
| ) | |
| NOE SANCHEZ a.k.a. ) | |
| EPIMENIO SANCHEZ GONZALES ) | |
| and MANUEL GONZALES, ) | |
| ) | |
| Defendants. ) | |

OPINION
=======

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Government's Notice of Conflict of Interest (d/e 28). Also before the Court is Defendants' Joint Motion for Severance (d/e 33). Defense counsel is DISQUALIFIED from representing Defendants because an actual conflict has arisen or a serious potential for conflict exists. Further, Defendants' Joint Motion for Severance is DENIED because the Government will eliminate use of the word "we" or reference to a co-defendant when introducing either of Defendants' statements at trial.

I. **FACTUAL BACKGROUND**

Mr. Sanchez and his nephew Mr. Gonzales have been indicted on charges of conspiring to manufacture and distribute marijuana, possession with intent to distribute marijuana, unlawful possession of a firearm by an illegal alien, and possession of a firearm in furtherance of a drug-trafficking crime. Mr. Sanchez has also been charged with illegal re-entry into the United States following deportation. As of the hearing on July 1, 2013, both Defendants were represented by Michael Thompson and Beau Brindley, attorneys with the Law Offices of Beau Brindley, Chicago, Illinois.

On September 22, 2011, agents from Kankakee County's Major Crimes Task Force recovered 2,253 cannabis plants from an agricultural property located at 7752 South 17000 East Road, St. Anne, Illinois. Small yellow plastic flowers had been tied to many of the plants to prevent aerial discovery of the plants. The agents also recovered a shotgun from a shed on the property. The shed was located approximately 75 yards away from the cannabis plants. Agents arrested Mr. Sanchez and Mr. Gonzales, who had been standing near the shed

when agents arrived at the property. Defendants were then transported to the Kankakee Sheriff's Department and separately interrogated. The Police video recorded both interrogations.

Initially, Mr. Sanchez denied involvement with the marijuana growing on the property. After further questioning, Mr. Sanchez stated that he and Mr. Gonzales had cultivated the marijuana plants for approximately 4 to 5 months. Mr. Sanchez also stated that the shotgun found on the property was used as protection for the marijuana crop and that he had carried the shotgun when he was in the cannabis field. Further, Mr. Sanchez stated that he and Mr. Gonzales were taking care of the crop for someone else and receiving payments for upkeep. Mr. Sanchez said that he and Mr. Gonzales planned to receive about $10,000.00 once they had harvested and packaged the crop. He stated that he first noticed the yellow flowers tied to the cannabis plants about one month prior to his arrest.

Mr. Gonzales stated in his interrogation that he and Mr. Sanchez planted the marijuana plants together and had cultivated them for about 4-5 months. Mr. Gonzales also acknowledged that he and Mr. Sanchez

had tied the yellow flowers to the plants about one month after planting the cannabis. Mr. Gonzales stated that he and Mr. Sanchez used the shotgun found on the premises when either worked near the marijuana. Mr. Gonzales provided further details about his and Mr. Sanchez's plans to cultivate, harvest, and distribute the marijuana crop. Mr. Gonzales said that he planned to make at least $150,000 by selling the cannabis.

## II.   PROCEDURAL BACKGROUND

Originally, Magistrate Judge David G. Bernthal found that Defendants could not afford an attorney and appointed Assistant Federal Public Defender Mr. John Taylor to serve as counsel for Mr. Sanchez. Mr. Peter Henderson, an Assistant Federal Public Defender, also entered an appearance on behalf of Mr. Sanchez. Bruce Ratcliffe, a Criminal Justice Act attorney in Champaign, Illinois, was appointed by Magistrate Judge Bernthal to represent Mr. Gonzales.

On February 15, 2013, Michael J. Thompson filed a Motion to Substitute Attorney on behalf of Defendants and asked that he and Mr. Beau Brindley, both attorneys at the Law Offices of Beau Brindley, be substituted as counsel for Defendants. See d/e 23, 24. Shortly

thereafter, Peter Henderson and Bruce Ratcliffe filed motions to withdraw as counsel. See d/e 25, 27. Since then, Mr. Thompson and Mr. Brindley have served as counsel of record for Defendants.

Following the substitution of attorneys, Elly Pierson, the Assistant United States Attorney prosecuting this case, filed a Notice of Conflict of Interest and Request for a Hearing (d/e 28). The notice identified the potential conflicts of representing both Defendants and argued that Mr. Brindely's Office should be precluded from representing both Defendants based upon those conflicts.

Mr. Thompson filed a Response to the Government's Notice arguing that he could represent Defendants without any conflict (d/e 29). He argued further that a conflict could arise, but only if one Defendant cooperated with the Government and decided to testify against the other Defendant at a joint trial. Mr. Thompson told the Court that neither Defendant planned to cooperate so that type of conflict would not arise in this case.

On May 5, 2013, Judge McCuskey entered an Opinion that found the Government had not provided any facts suggesting there would be an

actual conflict if Beau Brindley's Office represented Defendants (d/e 30). The Opinion also stated that Rule 44(c) of the Federal Rules of Criminal Procedure requires a court to personally advise defendants of the right to effective assistance of counsel, including separate representation.

To fulfill Rule 44(c)'s mandate, Judge McCuskey scheduled and held a hearing on May 3, 2013. At that hearing, Judge McCuskey set an Evidentiary Hearing for May 7, 2013 and arranged for an interpreter to be present in the courtroom.

During the May 7, 2013 hearing, Judge McCuskey discussed the potential conflicts that could arise including that: (1) dual representation may prevent Mr. Thompson from communicating effectively with both Defendants; (2) the Government could offer a deal to one Defendant that might be different from the deal offered to another Defendant; (3) part of a plea agreement could require one Defendant to testify at trial against the other Defendant; (4) Defendants may disagree about which jurors to strike during jury selection at a joint trial; or (5) one Defendant may decide to cooperate during the sentencing phase and divulge information that would be prejudicial to the other Defendant. Judge

McCuskey also told Defendants that they faced mandatory minimum sentences of fifteen years based on the crimes charged.

Assistant United States Attorney Pierson added to Judge McCuskey's admonitions by stating that Mr. Gonzales and Mr. Sanchez are in two different positions with regard to prior criminal history.  See d/e 31 at 35-36.  Based on the Government's research, Mr. Gonzales does not have any criminal history points.  This would make Mr. Gonzales eligible for a safety-valve exception, which would eliminate the mandatory minimum sentence of fifteen years in his case.  See d/e 31 at 36.  If the safety-valve were applied, Mr. Gonzales could face a guideline range of approximately 33 to 41 months' imprisonment.  See d/e 31 at 36.  If Mr. Gonzales were to accept responsibility, he could face something closer to 24 to 30 months' imprisonment.  See d/e 31 at 36.  Despite these admonitions, Defendants waived the potential conflict.  See d/e 31 at 36-42; see also d/e 29, Ex. 1, 2.

At the end of the May 7, 2013 hearing, Judge McCuskey took the conflict issue under advisement.  Judge McCuskey also set a briefing schedule with all of Defendants' pretrial motions due by June 7, 2013

and all of the Government's responses/motions due by June 26, 2013. He noted that the case needs to move along because Defendants were arrested on January 26, 2012 and have been in custody since that date. Judge McCuskey then set a status hearing to be held July 1, 2013 at 3:00 p.m. so the Court could discuss the conflict issue, address any pending motions, and determine a trial date if necessary.

On May 28, 2013 Judge McCuskey recused himself from this case. The case was transferred to this Court in the Springfield Division of the Central District of Illinois.

On June 7, 2013, Defendants filed a Joint Motion for Severance (d/e 33). On June 26, 2013 the Government filed a Motion in Opposition to Defendants' Joint Motion for Severance (d/e 35).

On July 1, 2013, this Court held a hearing with a telephone interpreter present by phone and Assistant United States Attorney Pierson present by video conferencing technology. The parties discussed the conflict issue and Defendants' Joint Motion for Severance.

In regards to the conflict issue, the Court asked the Government and Mr. Thompson whether any negotiations as to pleas had occurred

since the May 7, 2013 hearing before Judge McCuskey. The Court also went over the potential conflicts already listed by Judge McCuskey and added that trial strategies may be different for each Defendant. Both attorneys indicated that negotiations had occurred. Neither party, however, divulged the content of the negotiations. Further, Mr. Thompson indicated that neither Defendant was willing to cooperate and that both intended to go to trial.

After hearing this new information, the Court addressed the conflict issue and Joint Motion for Severance. The Court found that a conflict precludes joint representation and that the trials may be held jointly without Confrontation Clause issues. The following includes the reasoning for those decisions.

## III.   ANALYSIS

A.   **Mr. Thompson May Not Represent Both Clients Because He Cannot Communicate With Each Defendant In a Manner that Serves the Defendant's Individual Interests**

Mr. Thompson has argued that both of his clients remain adamant that neither will cooperate against the other. So long as this remains the

case, Mr. Thompson believes he can represent both Defendants without a conflict.

Defense counsel bases his argument on United States v. Turner where the Seventh Circuit vacated a conviction and remanded the case to the district court after the district court had found a conflict precluded retained counsel from representing co-defendants in a drug conspiracy case. 594 F.3d 946, 954 (7th Cir. 2010). The defendants in Turner had shown no interest in cooperating against each other. Id. at 953-54. Further, the Government had not asked either defendant to assist the prosecution. Id. at 953. The Seventh Circuit found the possibility that either defendant might have a change of heart and decide to assist the government against the other was a potential conflict, not an actual conflict or a circumstance that presented the serious potential for a conflict. Id. at 954. Because the conflict was only potential, disqualification of retained counsel was inappropriate. Id. at 954.

However, in this case, the conflict has ripened to the point that Defendants' choice of counsel is outweighed by their right to effective assistance of counsel. Specifically, both Defendants face a mandatory

minimum fifteen year sentence upon conviction. However, Mr. Gonzales has no criminal history points, and, therefore, according to the Government, is safety-valve eligible. If the Government were to decide that the safety-valve is appropriate for Mr. Gonzales' case, Mr. Gonzales would face a Sentencing Guideline Range of approximately 33 to 41 months' imprisonment. See d/e 31 at 36. Further, if Mr. Gonzales were to accept responsibility, he could face something closer to 24 to 30 months' imprisonment. Mr. Gonzales has already been in custody for over seventeen months.

    For Mr. Gonzales to receive the benefit of the safety-valve, he must provide substantial assistance in the investigation or prosecution of another person who has committed an offense. See 18 U.S.C. § 3553(e). And here, the Government *has* made efforts to talk with Defendants. At this point then, Mr. Gonzales' best interests clearly include doing what the Government asks so he can receive a sentence significantly lower than the fifteen year minimum he otherwise faces.

    As Mr. Gonzales' lawyer, Mr. Thompson is required to apprise him of these truly significant benefits. Apprising Mr. Gonzales of these

benefits would also require Mr. Thompson to encourage Mr. Gonzales to cooperate with the Government. This remains true even if Mr. Gonzales persists in his refusing to cooperate.

However, by encouraging Mr. Gonzales to aid the Government, Mr. Thompson would be, at minimum, encouraging cooperation that has the serious potential to implicate Mr. Sanchez in some type of criminal conduct. Clearly then, Mr. Thompson faces a situation where he must provide Mr. Gonzales with prudent legal advice, but would do so knowing that his advice could be detrimental to his other client, Mr. Sanchez.

Moreover, Mr. Thompson has filed a Joint Motion for Severance that argues severance is appropriate because Defendants have made statements that, if introduced, could violate the co-defendant's Confrontation Clause Rights. See d/e 33. Mr. Thompson asserts that severance is completely different from the issue of whether a conflict exists. See d/e 31 at 9.

However, the fact that Defendants believe fairness necessitates separate trials also implies that Defendants have an interest in having

their cases litigated differently.  Consequently, the severance and conflict issues are far from divorced.  This reasoning further supports disqualifying Mr. Thompson as Defendants' counsel.

In sum, the Government has sought cooperation from Defendants.  Mr. Gonzales stands to benefit significantly from cooperating with the Government.  Based on these facts, and the fact that Defendants appear to want their cases litigated separately and differently, a serious potential for conflict or an actual conflict has ripened.

Further, Mr. Thompson has information from both Defendants that would compromise his ability to ethically and adequately represent only one Defendant in the matter.  Consequently, Mr. Thompson is disqualified from representation of Defendants.

Defendants have submitted financial Affidavits under oath that demonstrate neither can afford an attorney.  Therefore, Mr. Peter Wise has been appointed to represent Mr. Gonzales and Assistant Federal Defender Daniel Hansmeier has been appointed to represent Mr. Sanchez.

B.	Defendants Will Be Tried at the Same Trial But the Government Must Eliminate Use of the Word "We" and Any Reference to a Co-Defendant When Introducing Evidence of Defendant's Respective Statements at Trial

Also pending before the Court is Defendants' Joint Motion for Severance (d/e 33).  Defendants' argue that the Government intends to introduce post-arrest statements from both Defendants at trial.  Defendants assert that Mr. Sanchez's statements implicate Mr. Gonzales, and Mr. Gonzales' statements implicate Mr. Sanchez.

Defendants argue further that neither Defendant can be forced to take the stand and be subjected to cross-examination on the contents of the respective statements.  Therefore, Defendants contend, admission of either statement would violate the Confrontation Clause of the Sixth Amendment.  Consequently, if the Government intends to introduce these statements, Defendants seek severance of their trials pursuant to Federal Rule of Criminal Procedure 14.

Defendants are correct that the Sixth Amendment forbids admission of a co-defendant's confession that expressly implicates the defendant if the co-defendant chooses not to testify.  See Bruton v. United States, 391 U.S. 123 (1968); see also Smith v. Farley, 59 F.3d

659, 663 (7th Cir. 1995). Admission of such a confession deprives the defendant of his right to confront the confessing co-defendant. When this issue arises, courts have discretion under Federal Rule of Criminal Procedure 14 to sever the defendants' joint trial.

However, Rule 14 also gives courts the authority to craft any other relief, other than severance, that would negate prejudice to the defendants. To that end, the Supreme Court has held that a co-defendant's confession implicating the defendant may be admitted at a joint trial if reference to the defendant is redacted in such a way that the statement does not obviously refer to the non-confessing defendant, but rather, incriminates him only when linked with evidence introduced later at trial. If such a statement is admitted, the district court must also tell the jury that the statement may not be considered against the non-confessing defendant. See Richardson v. Marsh, 481 U.S. 200 (1987) (upholding the admissibility of the co-defendant's confession and stating that "the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when, . . . the confession is redacted to eliminate not only the

[defendant]'s name, but any reference to his or her existence"); see also Gray v. Maryland, 523 U.S. 185 (1998) (finding redactions that included blank spaces or the word "deleted" or "deletion" where the defendant's name would have been "refer[red] directly to someone, often obviously the defendant, and [] involve[d] inferences that a jury ordinarily could make immediately, even if the confession was the very first item introduced at trial"). Courts should decide the severance issue while bearing in mind that a joint trial of alleged co-conspirators who are jointly indicted is presumptively appropriate. United States v. Caliendo, 910 F.2d 429, 437 (7th Cir. 1990).

Here, to avoid any Confrontation Clause issues, the Government had indicated its willingness to introduce the Defendants' respective statements through video recordings and transcripts without using portions of those statements that state "we" or reference the co-defendant. Further, if the Government introduces Defendants' statements through testimony of a police officer, the Government has agreed to do so using leading questions to avoid use of the word "we" or a reference to the co-defendant.

Introducing the statements in this manner will prevent admission of one defendant's statement that incriminates the co-defendant. Consequently, each Defendant's right to confront witnesses against him will not be infringed on and Defendants' trials may proceed jointly. This decision protects the rights of each Defendant and furthers efficiency of the courts.

### IV.   CONCLUSION

Beau Brindley's Law Office may not represent either Defendant in this matter. Further, Defendants' Joint Motion for Severance (d/e 33) is DENIED. This matter will proceed before this Court in the Springfield Division of the Central District of Illinois with Mr. Wise as counsel of record for Mr. Gonzales and Mr. Hansmeier as counsel of record for Mr. Sanchez. A status hearing has been set for July 8, 2013 at 9:30 a.m. to discuss a trial date.

IT IS SO ORDERED.

ENTER: July 8, 2013

FOR THE COURT:                s/ Sue E. Myerscough
                              SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE